UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN  RE:   ROBERT  PAUL  MOORE,  JR
and JENNIFER REBECCA MOORE

_____

DENNIS     FIANDOLA     and     LISA
FIANDOLA,

        Appellants,

v.                                                             Case No:  2:14-cv-335-FtM-38

JENNIFER  REBECCA  MOORE  and
ROBERT PAUL MOORE, JR ,

        Appellees.

_____/

## ORDER[1]

    This matter comes before the Court on the Appellants, Dennis and Lisa Faindola's

Appeal of the Written Opinion and Judgment of the United States Bankruptcy Court for

the Middle District of Florida (Doc. #6) filed on October 9, 2014.  The Appellees, Robert

and Jennifer Moore filed their Brief in Opposition on October 22, 2014.  The Appeal is

now ripe for the Court's Review.

## FACTS

    The Appellee, Jennifer Moore through her business Moore Pizazz, LLC entered

into an agreement on February 28, 2011, to perform interior design services and provide

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

custom goods for the Appellants Dennis and Lisa Faindola.  As part of the agreement, the Faindolas tendered $30,000.00 to Moore Pizazz for custom furnishings.  The agreement called for the Faindolas to pay eighty percent (80%) of all custom furnishings upon ordering.  Jennifer Moore subsequently requested the Faindolas to provide another $40,000.00 for the work.   The Faindolas questioned the need for the additional funds so soon into the project but were assured by Jennifer Moore that the funds would not be lost and the project would be completed.

Moore was unable to complete the Faindolas' project and did not deliver on all of the goods and services agreed to by the Parties.  The Faindolas acknowledge that they received some of the goods and services they paid for but not everything.  As a result of Moores' failure to deliver on the agreement, the Faindolas sued Moore Pizazz in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida.  The Faindolas prevailed in their lawsuit and a judgment was entered against Jennifer Moore and Moore Pizazz.  Robert and Jennifer Moore and Moore Pizazz, LLC subsequently filed for bankruptcy in the United States Bankruptcy Court in and for the Middle District of Florida on August 7, 2012.

Shortly after entering into bankruptcy the Moores disclosed their income in the Statement of Financial Affairs.  The Moores did not list assets they had sold—prefiling—namely two vehicles that were sold earlier that year for approximately $35,000.00.  In addition, Robert Moore failed to disclose income derived via a consignment shop from the sale of assets belonging to the Moores' business, Moore Pizazz, during the 341 Meeting of Creditors.   The Moores amended their Statement of Financial Affairs subsequent to the 341 meeting and added the sale of the vehicles but still omitted to

disclose the sale of assets belonging to Moore Pizazz.   Several months after the Bankruptcy Court trial, the Bankruptcy Court entered a final judgment in favor of the Moores.   The Faindolas now appeal the Bankruptcy Court's decision to this Court.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a). The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Fish, 2013 WL 1104884, *2 (M.D. Fla. March 18, 2013) (citing In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir.1994)). This Court reviews de novo the legal conclusions of the bankruptcy court. In re Fish, 2013 WL 1104884 at *2 (citing In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir.1993)).

The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." In re Fish, 2013 WL 1104884 at *2 (citing In re Thomas, 883 F.2d 991, 994 (11th Cir.1989)). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Crawford v. W. Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir.1984) (citing United States v. United States Gypsum Co., 333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

**DISCUSSION**

The Faindolas argue the Bankruptcy Court erred on three rulings: (1) when it found that Robert Moore's failure to disclose the sale of two vehicles in the Moores' Statement of Financial Affairs was unintentional; (2) when the Court found that the Moores did not have a duty to explain the loss of an asset when that asset was money belonging to the business, Moore Pizazz; and (3) when the Bankruptcy Court found that money obtained from the sale of assets from the business by Robert Moore did not have to be declared as income for the Moores in their Statement of Financial Affairs.

*(1) Money from the Sale of the Automobiles*

The Faindolas argue the Bankruptcy Court erred when holding the money made from the sale of the Moores' automobiles was inadvertently left off their Statement of Financial Affairs.  The Faindolas state this Court should remand the decision back to the Bankruptcy Court because the Court failed to make a factual determination as to the materiality of the funds transfer.  The Moores respond that leaving the funds out of the Statement of Financial Affairs was not a material misrepresentation under 11 U.S.C. § 727(a)(4)(A).

Pursuant to 11 U.S.C. § 727(a)(4)(A), a Court shall not grant a discharge to the debtor(s) if "the debtor knowingly and fraudulently, in or in connection with the case--- (A) made a false oath or account." The subject matter of a false oath is material, if it bears a relationship to the bankrupt business transactions on estate, concerns the discovery of assets, business dealings, or the existence and disposition of his property. In Re Chalik, 748 F.2d 616, 618 (11th Cir. 1984).

In this instance, Robert Moore admitted at the 341 hearing that he had indeed sold the two automobiles for approximately $35,000.00 and omitted the funds from his Statement of Financial Affairs.  At the bankruptcy trial, Robert Moore was forthcoming about the sale of the automobiles and testified that the earlier omission of the sale was a mere mistake with no intent to hinder, delay or defraud.

After hearing Robert Moore's testimony during the bankruptcy trial, the Bankruptcy Court held that Robert Moore's omission of the funds obtained from the sale of the automobiles in January 2012, was inadvertent.  The Bankruptcy Judge made a credibility determination as to the veracity of Robert Moore's statements, and there is no basis for this Court to overturn the Bankruptcy Court's credibility determination. See In re Fish, 2013 WL 1104884 at *2 (holding due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses).  Therefore, the Bankruptcy Judge's finding that the Appellees did not deliberately omit the proceeds from the sale of the vehicles is affirmed.

*(2) Whether the Moores had a Duty to Explain the Loss of a Business Asset*

The Faindolas argue the Bankruptcy Judge erred in discharging the Moores' bankruptcy by holding that under 11 U.S.C. § 727(A)(5) the Moores did not have a duty to explain the loss of an asset when that asset was money belonging to the debtors of the single member LLC.  The Moores respond that under 11 U.S.C. §727(A)(5) a debtor does not have a responsibility to explain the loss of an asset when that asset was money belonging to the debtor's dissolved single member LLC.

The debtor's fresh start is the primary objective of bankruptcy law. In re Murphy, WL 2224835, *2-3 (M.D. Fla. May 27, 2008) (citing In re Chauncey, 454 F.3d 1292, 1295

(11th Cir.2006)).  As such, "all debts that arose before the date of the order for relief" are generally discharged in Chapter 7 proceedings. 11 U.S.C. § 727(b). Courts construe the statutory exceptions to discharge liberally in favor of the debtor and recognize that the reasons for denying a discharge must be real and substantial, not merely technical and conjectural. In re Miller, 39 F.3d 301, 304 (11th Cir.1994). Section 727(a)(5) of the Bankruptcy Code provides, in pertinent part, that the court shall grant the debtor a discharge of his debts, unless- . . .

>  (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).  The question of whether a debtor satisfactorily explains a loss of assets is a question of fact. In re Chalik, 748 F.2d at 619 (citing, Shapiro & Ornish v. Holliday, 37 F.2d 407 (5th Cir.1980).

    In her Order overruling the Faindola's objection to the Moores' discharge (Doc. #1-2), Judge Delano stated that § 727(a)(5) concerns only assets belonging to the debtor. Therefore, she held that § 727(a)(5) does not require Mrs. Moore to explain the deficiency of Moore Pizazz's assets. (Doc. #1, Ex. 002, p. 8).  Judge Delano, based her decision on the holding in In Re Harmon, which found that the party objecting to discharge must first prove that the debtor at one time owned the assets which are no longer available for creditors. 379 B.R. at 190.   As the Bankruptcy Judge explained in her Order, the funds at issue were the property of Moore Pizazz and not Jennifer or Robert Moore. (Doc. #1-1, p. 8 n.21; p. 10).  As such, the Moores did not have an obligation to explain the loss of the funds under § 727(a)(5) because the funds belonged to Moore Pizazz, LLC. (Doc. #1-1, p. 7); See National Tour Association, Inc. v. Rodriquez, 221 B.R. 1012, 1014 (Bankr.

M.D. Fla. 1998) (holding that a defendant's use of customer deposits to pay for general business expenses did not constitute conversion).   As such, the decision of the Bankruptcy Judge on this issue is affirmed.

However, even if the Bankruptcy Judge erred in her decision, this Court finds the error would be harmless because the Moores satisfactorily explained the disposition of the funds at issue.  There are two stages of proof under § 727(a)(5). In re Harmon, 379 B.R. 182, 190 (Bkrtcy. M.D. Fla. 2007). "First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors." Id.; *See* In re Chalik, 748 F.2d at 616 (the party objecting to the debtor's discharge has the burden of establishing that the debtor is not entitled to receive a discharge by a preponderance of the evidence)).  "Second, if the party objecting to the discharge meets his burden, then the debtor is obligated to provide a satisfactory explanation of the loss." In re Harmon, 379 B.R. at 190 (citing In re Mantra, 314 B.R. 723, 730 (Bankr.N.D.Ill.2004)

In this case, the Faindolas allege the Moores failed to explain satisfactorily the loss of assets from Moore Pizazz.  The Faindolas argue the Moores cannot be discharged because Robert Moore sold assets that belonged to Moore Pizazz without reporting the income. They further argue that Moore Pizazz had $158,000 in unaccounted for assets. The Fiandolas state that at the trial, Robert Moore, testified he and his wife gave Moore Pizazz, LLC $60,000 in 2011. (Doc. #1-61, pp. 56-59). Jennifer Moore testified at trial that she gave about $32,000 to the landlord of the showroom she rented. (Doc. #1-61, p.67). Other than the $32,000 and a few thousand more for employees, Jennifer Moore testified that she was not paying any bills, not spending money on entertainment, and only

spending money on groceries. Further, Jennifer Moore testified that some of the living expenses (i.e. groceries) were possibly paid for using personal credit cards. (Doc. #1-61, pp. 66-69). Jennifer Moore took a $30,000 deposit from the Faindolas after paying the $32,000 to the landlord for her new showroom. Jennifer Moore further testified the Faindolas gave them an additional $40,000 (approximately) and that they received money from other creditors (at least $90,000). (Doc. #1-61, p. 82). The Faindolas argue that they identified significant assets that were not accounted for by the Moores.

Contrary to the Faindolas argument, the Moores did testify concerning the funds. The Moores testified that the $8,200.00 and other deposits received from the sale of Moore Pizazz's assets by Robert Moore and funds provided in advance for work on the Fiandola's house went to pay for work performed on the Fiandola's house as well as work performed for other clients of Moore Pizazz. (Doc. #1-61, pp.53-54).   Any remaining assets of Moore Pizazz that were not sold were left in the showroom because they were contaminated with mold. (Doc. #1-61, pp.53-54).   Jennifer Moore testified that upon receiving the Fiandolas' deposit she purchased their goods and services according to their contract.  Regarding the goods and services received by the Faindolas, Jennifer Moore testified that "they got their faux finishing, they got two entertainment centers, Caprice little table, [and] their master bedroom". (Doc. #1-61, p.91).  The Faindolas do not dispute that they received some of the goods and services they paid for.  Concerning the $8,200.00 received from the sale of Moore Pizazz's assets, Robert Moore testified that the funds went to pay for work done on the Fiandola's house as well as work done for other clients.

After construing the statutory exceptions to discharge liberally in favor of the debtors, the Court finds the Moores set forth sufficient information to demonstrate what happened to the funds derived from the sale of Moore Pizazz's assets and the funds provided by the Faindolas.  As such, there are no grounds under 11 U.S.C. § 727(a)(5) to overturn the Bankruptcy Court's discharge.

*(3) Whether the Bankruptcy Court Erred by not Imputing Income to Robert Moore after the Sale of Moore Pizazz's Assets*

The Faindolas assert the Moore's discharge should be remanded because Robert Moore sold assets from Moore Pizazz and did not report said income on his Statement of Financial Affairs.  Specifically, the Faindolas argue that Robert Moore sold approximately $8000.00 worth of assets that belonged to Moore Pizazz, LLC through a consignment shop d/b/a as Posh Plum.  They further allege that Posh Plum made out the checks for the sale of the assets to Robert Moore personally and not to Moore Pizazz.  Thus, the Faindolas assert that the funds from the sale of the assets from Moore Pizazz should be counted as personal income for the Moores.  The Faindolas argue that since the Moores did not report the income in their Statement of Financial Affairs, the Bankruptcy Court erred when it allowed the Moore's discharge.

A bankruptcy discharge should be denied under § 727(a)(4)(A) when a false oath or account was knowingly and fraudulently made and related to a material fact.  In Re Chalik, 784 F. 2d at 618.  A false oath is material when "it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  Id.  However, because § 727(a)(4)(A) aims to "prevent knowing fraud or perjury," the objection should not apply to

"minor errors." In Re Dupree, 336 B.R. 490, 494 (Bankr M.D. Fla. 2005) (holding that "[t]here is a difference between a debtor who is trying to hide assets with a false oath or material omissions in his Statement of Financial Affairs, and a debtor who, through inadvertence, mistake, or ignorance of the issue of materiality in his disclosures, may omit certain assets in his original Statement of Financial Affairs."). Thus, courts analyze the omissions or nondisclosures to determine whether or not they were part of a scheme to retain assets for the debtor's own benefit at the expense of creditors. Id.

At the trial, Robert Moore testified that he sold assets belonging to Moore Pizazz for approximately $8,200.00. (Doc. #1-61, pp. 53-54). He further testified that the $8,200.00 received from the sale of Moore Pizazz's assets went to pay for work done on the Fiandola's house as well as work done for other clients. Robert Moore testified that he "paid the faux painter. I paid a tile layer. I finished a job, Arlene Greenberg's job." (Doc. #1-61, pp.53-54). Robert Moore continued "I was working on finishing another job that I'm working on, Batti's. I was finished Batti's—well, I'm not done with him yet." (Doc. #1-61, pp.53-54).

In her decision, the Bankruptcy Judge found the funds derived from the sale of the assets belonging to Moore Pizazz should not be imputed as income to Robert Moore. Specifically the Bankruptcy Judge stated in pertinent part:

> Regarding Defendants' alleged failure to list income from the sale of Moore Pizazz assets on their statement of financial affairs, the evidence at trial was that Mr. Moore used the sale proceeds to pay Moore Pizazz's obligations. There was no evidence that the proceeds were retained by Defendants or used for personal purposes; thus, the proceeds are not imputed to Defendants and need not have been disclosed by them as income on their statement of financial affairs.

(Doc. #1-1, p.7).

The Bankruptcy Judge noted that since the funds from the sale of the Moore Pizazz's asserts were used to pay off the businesses debts or perform obligations for goods and services incurred by the business, the funds were not imputed as income. The Bankruptcy Judge's decision is in compliance with the Bankruptcy Code's statutory definition of income.  Under 11 U.S.C. §101(10A) and (10B).

(10A) The term "current monthly income" is defined in the statue as:

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—

> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521 (a)(1)(B)(ii); or

> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521 (a)(1)(B)(ii); and

> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), **on a regular basis for the household expenses of the debtor or the debtor's dependents** (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism. (emphasis added).

11 U.S.C. §1325(b)(2)(A) states in pertinent part:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made

in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)

(i) **for the maintenance or support of the debtor or a dependent of the debtor,** or for a domestic support obligation, that first becomes payable after the date the petition is filed;…. (emphasis added).

Since the Bankruptcy Judge determined the funds obtained from the sale of Moore Pizazz's assets were not used for the maintenance or support of the Moores, but were instead used to fulfill the obligations of the business itself, the Bankruptcy Judge did not err when she did not impute the funds as income to Robert Moore.  Therefore, the decision of the Bankruptcy Judge is affirmed on this issue.

## CONCLUSION

After a complete review of the Parties' briefs and the record of the Bankruptcy Court, the decision of the Bankruptcy Judge is affirmed.

Accordingly, it is now

**ORDERED:**

The Decision of the United States Bankruptcy Court Granting the Appellees' Discharge is hereby **AFFIRMED**.  The Clerk shall enter judgment accordingly, transmit a copy of this Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 6th day of March, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record